**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD KEVIN STORN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY<br><br>Defendant. | Case No. 1:26-cv-03475 (PKC)<br><br>Hon. P. Kevin Castel |

# [~~PROPOSED~~] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

Plaintiff Ronald Kevin Storn and Defendant Morgan Stanley, through their counsel, submit this [Proposed] Order Re: Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol" or "Protocol"), to facilitate discovery in this litigation. All productions made pursuant to this ESI Protocol are subject to the Protective Order and any further protective orders or other orders entered in this Action.

The Parties shall make good-faith efforts to comply with and resolve any differences concerning compliance with this Protocol, including by meeting and conferring consistent with the Parties' obligations under Rule 26(f). If a Producing Party, notwithstanding its good-faith efforts, is unable to reasonably comply with any material aspect of this Protocol, such Party shall inform the Receiving Party in writing a reasonable time before the date of production as to why compliance with the Protocol is unreasonable. This Protocol is intended to serve as a supplement to the Local Rules, the Federal Rules of Civil Procedure, and/or other applicable statutes, laws, or

rules. The Parties specifically reserve all of their rights and objections to any discovery that may be served upon them in this matter.

## I. DEFINITIONS

1.1 "Action" means the above-captioned action.

1.2 "Custodial Data Source" means any data source that is kept or maintained by any particular agreed Custodian or potential Custodian, as defined herein, which may contain potentially relevant Documents or ESI (as defined herein), including data sources used by any department, business unit, or division of a Producing Party (as defined herein), and shared storage systems that may contain potentially relevant information. Custodial Data Source does not include any Excluded Sources (as defined herein).

1.3 "Custodian" means the individual or originating source from which Documents or ESI, as defined herein, will be collected and reviewed.

1.4 "Designating Party" means any Party or non-party that designates ESI or Hard Copy Documents as confidential under the Protective Order.

1.5 "Document" shall have the meaning contemplated by Rule 26.3(c)(2) of the Local Rules of Civil Procedure of the United States District Court for the Southern District of New York ("Local Rules") and Federal Rule of Civil Procedure 34(a)(1)(A). A reference to "Document(s)" shall include both ESI and Hard Copy Document(s), as defined herein. A draft or non-identical copy is a separate Document.

1.6 "Document Family" refers to a group of related ESI, as defined herein, that includes parent and child Documents as maintained in the ordinary course of business (e.g., a parent Email and any attachments thereto).

Case 1:26-cv-03475-PKC Document 26-1 Filed 09/10/26 Page 4 of 32

1.7 "Electronically stored information" or "ESI" shall have the same meaning it has in Federal Rule of Civil Procedure 34(a)(1)(A).

1.8 "Email" means an electronic means for sending, receiving, and managing communications via structured data applications (Email client software), including, but not limited to, Microsoft Outlook, Google, Gmail, Yahoo Mail, or Lotus Notes, and the file created or received by such means, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to collect such ESI.

1.9 "Extracted Text" means the text extracted from a Document, and includes all header, footer, and Document body information when reasonably available. A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of Hard Copy Documents or scanned PDF Documents, subject to OCR (as defined herein), a file containing the text resulting from the OCR.

1.10 "Excluded Sources" means backup data files maintained in the normal course of business for purposes of disaster recovery that is substantially duplicative of data more accessible elsewhere; Random access memory (RAM); temporary files; or other ephemeral data that are difficult to preserve without disabling the operating system; on-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies.

1.11 "Hard Copy Document" means a Document maintained in physical form and collected from physical files (paper) and not from electronic sources.

1.12 "Instant Message" means a real-time communication sent via chat or SMS, including but not limited to, Bloomberg Chat, Google Talk, WhatsApp, Yahoo! Messenger, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Line, Audium, Trillian, iMessage, Facebook Messenger, Slack, or any other proprietary instant messaging system.

Case 1:26-cv-03475-PKC Document 26-1 Filed 09/15/26 Page 5 of 32

1.13 "Linked Document" means a Document referenced by hyperlink and existing outside of the referencing Document's physical native file and stored in a secondary location. For the avoidance of doubt, a Producing Party has no obligation to produce Documents or ESI that are not within its possession, custody, or control.

1.14 "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File is used to import into a Document database all image, native, and text files and their corresponding production information, including extracted and user-created Metadata (as defined herein), as well as OCR (as defined herein) or Extracted Text, should such data be available.

1.15 "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

1.16 "Metadata" is used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file, and refers to the fields listed in Appendix A.

1.17 "Native" or "Native Format" means and refers to the format of ESI in the application in which it was originally created and/or as used by the Producing Party, as defined herein, in the usual course of its business and in its regularly conducted activities.

1.18 "Non-Custodial Data Source" means any data source that is not kept or maintained by any particular agreed Custodian or potential Custodian but which may contain potentially relevant Documents or ESI, including data sources used by any department, business unit, or division of a Producing Party, and shared storage systems that may contain potentially relevant information. Non-Custodial Data Source does not include any Excluded Sources.

Case 1:26-cv-03475-PKC Document 32 Filed 10/28/26 Page 5 of 32

1.19 "OCR" means the optical character recognition technology used to read Hard Copy Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

1.20 "Party" or "Parties" means, individually or collectively, all Plaintiffs and Defendants, as well as any later added plaintiffs and defendants.

1.21 "Producing Party" means any Party or non-party that produces ESI or Hard Copy Documents in this Action.

1.22 "Protective Order" means the Stipulated Protective Order entered in this Action (including as it may be amended or superseded).

1.23 "Receiving Party" means any Party that receives ESI or Hard Copy Documents from a Producing Party.

1.24 "Requesting Party" means any Party that seeks production of ESI or Hard Copy Documents.

1.25 "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

1.26 "Structured Data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

1.27 "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard Copy Documents. For files produced as TIFF images, each page of a Document shall be electronically saved as an image file, as provided in Paragraph 5.2.

## II. SCOPE

2.1 The procedures and protocols outlined in this Protocol shall govern the production format of Hard Copy Documents and ESI in this Action unless the Parties agree in writing to change them or the Court changes them. All productions made pursuant to this Protocol will be subject to the Protective Order and any further protective orders or privilege orders entered in this Action. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI, or of a Party requesting Documents or ESI.

2.2 This Protocol does not define the scope of production, nor the relevance of any particular information. This Protocol is intended to aid the Parties by providing a more predictable, cost-effective, and efficient management structure for the maintenance and production of electronic discovery. Nothing in this Protocol establishes any agreement as to either the temporal or subject matter scope of discovery in the Action, except as expressly stated. The discovery requests, objections thereto, agreements of the Parties, applicable law and rules, and any Court orders shall govern the scope of Documents to be produced.

2.3 The production specifications in this Protocol apply to Documents that are produced in this Action, except that, to the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government or intergovernmental investigations, such Documents may be produced in the same format in which they originally were produced in connection with such other cases or investigations, and nothing herein shall require the Producing Party to re-process or re-collect data or Documents (including re-population of Metadata fields) that have been processed or collected in connection with such other cases or investigations.

Case 1:26-cv-03475-PKC Document 26-1 Filed 09/10/26 Page 8 of 32

2.4 The Parties do not waive any objections including to the responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of any Document requests, or any other objection under the Local Rules or Federal Rules of Civil Procedure. Nothing in this Protocol shall be interpreted to require the disclosure of information that is otherwise not discoverable under the Local Rules, Federal Rules of Civil Procedure, or other applicable statutes, laws, or requirements.

2.5 The Parties shall meet and confer in good faith in an effort to resolve any disputes that may arise under this Protocol, prior to seeking assistance from the Court.

## III. PRESERVATION

3.1 The Parties have taken and will continue to take reasonable steps to preserve relevant Documents and ESI, including Metadata identified in Appendix A, in accordance with their obligations under applicable law.

3.2 To the extent that a Party wishes to exclude a category of Documents from preservation or production on the basis of proportionality or undue burden, the Producing Party will disclose the Document category and extent of the burden and Parties will meet and confer accordingly.

## IV. IDENTIFICATION AND COLLECTION OF DOCUMENTS

4.1 In general:

(a) The Parties shall meet and confer regarding the search methodologies the Producing Party proposes to employ to identify responsive Documents, and make such disclosures regarding their proposed search methodology that will permit the Requesting Party to evaluate the proposed methodology and enable meaningful meet and confers, such as the type of methodology

Case 1:26-cv-03475-PKC Document 32 Filed 10/23/26 Page 8 of 32

to be used (e.g., targeted collections, Search Terms, technology assisted review or other advanced analytics, manual review, whether associated attachments and embedded files are included in any search, etc.) and the Custodial Data Sources and Non-Custodial Data Sources to which they will be applied, along with information sufficient for the Requesting Party to evaluate the reasonableness of the agreed Custodians whose Documents are to be searched, including each proposed Custodian's job title and dates of employment, and the Custodial Data Sources and Non-Custodial Data Sources to be searched.

(b) Responsive Documents or categories of Documents that are easily identifiable and segregable shall be collected without the use of Search Terms or other agreed search methodology and promptly produced. The Producing Party will identify which categories of Documents it will produce with, and which without, the use of Search Terms or other advanced search methodology.

4.2 To the extent a Producing Party elects to use Search Terms and/or Boolean search strings or other limiters, including, by way of example only, date ranges and Email domains in Metadata fields, as a means of limiting the volume of information to be analyzed for responsiveness, prior to finalizing any such Search Terms or other limiters, that Producing Party shall disclose the following to the Requesting Party:

(a) The agreed Custodians whose ESI will be searched using Search Terms, and a description of the Custodial Data Sources and Non-Custodial Data Sources against which the limiters and/or Search Terms shall be run; and

(b) An initial list of the limiters and/or Search Terms the Producing Party intends to use.

4.3 Upon receipt of the proposed Search Terms and disclosures set forth above, the Requesting Party and Producing Party shall meet and confer to attempt to reach agreement on the Search Terms and/or limiters to be used to identify responsive Documents. To facilitate such meet and confers, the Producing Party shall discuss, among other matters, and to the extent not protected by the attorney-client privilege or work-product doctrine, whether the terms include relevant terminology, or nicknames, code words, euphemisms, acronyms, jargon, slang, terms of art, Email addresses, and other language likely to be contained in responsive Documents; appropriate synonyms for proposed Search Terms and variations on search syntax, for example, using wildcard characters, truncation, stem words, fuzzy logic and proximity terms to address over and under inclusiveness; and whether any appropriate testing and quality control measures were conducted or will be conducted to evaluate the sufficiency of the Search Terms. The Producing Party shall also provide Search Term hit reports showing, for each proposed Search Term, the number of Documents returned by that term uniquely and in total, and the number of Documents in the resulting Document Families. The Requesting Party and Producing Party hereby agree that negotiations regarding Search Terms and other limiters are intended to be a cooperative and iterative process, involving a good faith exchange of information and proposals to facilitate the negotiations.

4.4 The Parties agree that the mere fact that a Document has a hit or is captured by the application of any agreed upon Search Terms does not mean that such Document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Notwithstanding this provision, the Parties preserve all rights to challenge the sufficiency of any production based on the failure to produce responsive Documents that hit or are captured by any agreed upon Search Terms.

Case 1:26-cv-03475-PKC Document 26-1 Filed 10/10/26 Page 11 of 32

4.5 If a Producing Party elects to use Generative AI, Continuous Active Learning, or Technology Assisted Review ("TAR") or similar advanced analytics as a means of including or excluding Documents to be analyzed for responsiveness or culling or otherwise limiting the volume of information to be analyzed for responsiveness, the Producing Party shall disclose such intent to the Requesting Party and the Parties will meet and confer prior to its application. For the avoidance of doubt, a Producing Party need not disclose its use of Generative AI, Continuous Active Learning, or TAR solely to prioritize its review, so long as the tool is not used to cull the collection or otherwise limit the body of Documents subject to human responsiveness review. The Party propounding requests does not have "veto power" over whether the producing party uses Generative AI, Continuous Active Learning, or TAR for purposes of identifying documents or culling out documents for production, but will be provided with sufficient information to assess the reasonableness of its use thereof.

4.6 The parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

## V. PRODUCTION FORMAT

5.1 Format Guidelines. The Parties shall produce ESI and Hard Copy Documents according to the specifications provided in this Protocol. The Parties agree to meet and confer in good faith if any of the technological specifications set forth in this Protocol result in unforeseen technological issues. The Parties agree not to degrade the searchability of Documents as part of the Document production process.

5.2 Images. All responsive ESI and Hard Copy Documents, except ESI which is produced in Native Format pursuant to Paragraph 5.3, shall be produced as black and white, single-

page, 300 DPI, Group IV TIFF files. Where an original Document contains color and the color is reasonably necessary to the comprehension or use of the Document, the Receiving Party may request a color image or a Native Format version, and that request, subject to the reasonable availability or accessibility of the original Document, shall not be denied. Each Document's original orientation should be maintained (i.e., portrait-to-portrait and landscape-to-landscape). To the extent that a Document or ESI contains tracked changes or comments, the Document or ESI should be imaged showing tracked changes and comments.

5.3 Documents To Be Produced Natively. A Producing Party shall produce Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, and audio and video files in Native Format except where such files are redacted in accordance with this Protocol. Other Document types which may be difficult or costly to be accurately imaged, such as corrupted Documents, may be selected to be produced in Native Format at the Producing Party's discretion. The production of Structured Data, which the Parties may, from time to time, agree is also to be produced in its Native Format, is governed by Paragraph 5.8.

The production Load Files shall contain a link to the produced Native Format files. Each electronic file produced in Native Format shall be assigned a unique Bates number as set forth in Paragraph 5.6, and for each a single page placeholder TIFF image branded with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT" (or similar language), and any corresponding confidentiality designations will be produced. Each file produced in Native Format shall also carry the applicable confidentiality designation as a suffix to its file name (i.e., "[Bates number]_[confidentiality designation]"). No Party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse Party or non-party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced Native

Format Document without ensuring that either the corresponding placeholder slip sheet is attached to the Document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document.

Responsive ESI produced in Native Format shall be produced with all required Metadata contained in or associated with that file to the extent reasonably feasible. Extracted Text taken from files produced in Native Format will be provided at a Document level. There will be one text file per Document, using the same name as the beginning Bates number of the Document. The Extracted Text file for a Document will reside in a folder titled "TEXT." The text file associated with any redacted Document will exclude redacted text (i.e., the Producing Party will OCR the redacted image and replace the original Extracted Text).

If production in Native Format is necessary to decipher the meaning, context, or content of a Document produced only in TIFF format, the Producing Party shall honor a reasonable written request made in good faith and shall produce the Document in Native Format within 14 days, unless such production would reveal material redacted in accordance with Paragraphs 5.9 or 5.25.

Where the Document produced only in TIFF format that is requested in Native Format contains redactions, the Producing Party will, if reasonable, produce a version of the Native Format Document containing redactions. If the Producing Party is unable to do so, the Parties will meet and confer to resolve the issue.

5.4 Extracted Text and OCR. Each Document, whether produced in TIFF or Native Format, and whether originally existing as ESI or as a Hard Copy Document, shall be produced with Extracted Text or OCR, as described herein:

(a) Extracted Text (Emails, Unredacted Native ESI, and Natively Redacted Spreadsheets). All Email, un-redacted ESI, and spreadsheets redacted and produced in Native

Case 1:26-cv-03475-PKC Document 26-1 Filed 09/23/26 Page 14 of 32

Format, should be provided with complete Document-level Extracted Text files. Extracted Text shall include all comments, track changes, user-modifiable fields, speaker's notes, author comments, contacts, calendars, and all other hidden content including, but not limited to, worksheets, columns, rows, etc. Where hidden content, tracked changes, comments, or speaker's notes cannot be preserved in the Extracted Text, the Producing Party shall, upon request and where reasonable, produce the Document in Native Format. However, Spreadsheets that have been redacted in native format should have the underlying redacted text removed from the produced Text file prior to production

(b) OCR (Redacted Native ESI, Hard Copy Documents). In the event a Document, other than spreadsheets redacted and produced in Native Format, contains text that is to be redacted, OCR text files should be provided for the entire Document after the redaction has been applied. Document-level OCR text files should also be provided for Hard Copy Documents, and PDFs that do not have embedded text, and images that the Producing Party determines are likely to contain text. To the extent that a Document is redacted as allowed under Paragraphs 5.9 or 5.25, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, e.g., with the notation "Redacted – Privileged" or "Redacted – Other" where applicable.

(c) Format of Extracted Text and OCR. The extracted full text and/or OCR text for all deliverables should be in separate Document-level, UTF-8 TXT files provided in a separate folder.

5.5 Instant Messages and Social Media. To the extent Instant Messages are produced, a Party shall produce such Instant Messages such that individual Instant Messages are grouped into threads (i.e., continuous conversations between one or more individuals) in twenty-four (24)

hour periods in a manner to allow for the full context of the responsive components of the conversations to be visible, where reasonable. The twenty-four (24) hour period will be determined by the time zone in which the data is processed. Where no responsive Instant Messages exist within the 24-hour period, that document need not be produced. For any Instant Messages or social media postings produced, this metadata will be produced to the extent reasonably available: BegBates, EndBates, Custodian(s), Instant Message Type (e.g., Slack, Google Talk, etc.), or Social Media Platform (e.g., Facebook, Instagram, Twitter, etc.), Instant Message Participants (to the extent available: senders, recipients, subscribers, or other participants in a group message or channel), Subject (Subject or name of the messaging thread or topic), Channel (to the extent available: name of persistent messaging group or chat room).

5.6 Unique IDs. Each image should have a unique filename, which corresponds to the Bates number of that page. Bates numbering should contain no special characters or blank spaces, be zero-padded, and be numerically sequential within a given Document. If a Bates number or set of Bates numbers is skipped, the skipped number, or set of numbers, should be noted with a placeholder and in the accompanying cover letter. All attachments to Documents will be assigned Bates numbers that directly follow the Bates numbers on the Documents to which they were attached. Bates numbers will be unique across the entire production and prefixes will be consistent across all Documents a Party produces in this Action.

5.7 Mobile and Handheld Device Documents and Data. For each agreed Custodian, a Producing Party shall investigate whether responsive Documents or data reside on any mobile or handheld device, including cellphones and tablets, or in any application used on such a device, and whether such data is otherwise captured by other Custodial Data Sources or Non-Custodial Data Sources already being collected and searched. Following such investigation, the Parties shall meet

and confer regarding whether data from any mobile or handheld devices shall be collected and searched.

5.8 Databases, Structured, Aggregated, or Application Data. To the extent a response to discovery requires production of discoverable electronic information contained in a database (including Microsoft Access files) and the responsive data cannot reasonably be produced in either Excel or .csv format, in advance of producing such information, the Parties agree to meet and confer regarding the format of the production (e.g., commercial database, or some other agreed-upon format). To the extent available, the Producing Party will produce a data dictionary for the fields provided and will answer reasonable requests to explain any codes or abbreviations contained in the Structured Data through a meet-and-confer process.

5.9 Document Families. A Document should be produced together with its entire Document Family, and the Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced unless excepted herein. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent Document shall be preserved. The child-Document should be consecutively produced immediately after the parent-Document. Each Document shall be produced with the production number for the first and last page of that Document in the "BegBates" and "EndBates" fields of the data Load File and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the Document Family.

If a member of a Document Family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates numbered slipsheet that states "Technical issue-file

cannot be processed" (or similar language). The associated Metadata for the file with the technical problem shall be produced if technically possible and reasonable. A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

If a Party claims that a member of a Document Family that contains a responsive Document is privileged, it may be redacted or produced as a Bates-labeled slip sheet in place of the attachment, along with all non-privileged Metadata for the attachment as specified in Appendix A, except that the full text Metadata field need not be populated. The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Privileged" (or similar language). The Parties agree to meet and confer in good faith to attempt to resolve any disputes arising under this provision.

In the event that a Party initially withholds a Document that forms a part of a Document Family, and that Document is later produced either by decision of the Party or by order of the Court, the Party shall produce that Document such that the slipsheet previously replacing that Document in the production is easily identifiable. Where possible, the Producing Party shall provide updated Metadata associating the previously withheld Document with its Document Family. Where necessary to preserve Document Family Metadata, the Producing Party shall re-produce the entire Document Family, except any member that must continue to be withheld or redacted, with new Bates numbers.

5.10 Metadata. The Metadata fields detailed in Appendix A will be produced for each Document to the extent that such information is reasonably available and extractable, except that if a field contains privileged information, that information may be redacted. For redacted or privileged Documents, only the BegBates, EndBates, BegAttach, EndAttach, Custodian, Duplicate

Custodian, Confidentiality, Page Count, Production Volume, Redaction, and Full Text Metadata fields need to be produced. For the avoidance of doubt, the Full Text Metadata field will contain only non-redacted content for redacted Documents and no content for fully withheld Documents.

5.11 Exception Files. The Parties will use reasonable efforts to ensure that Documents that present imaging or form production problems (including encrypted and/or password protected files) are successfully processed for review and production. For any unprocessed or unprocessable Documents contained in a production, the Producing Party shall include a placeholder indicating why such document was not or could not be processed (e.g., password protected, corrupted, etc.)

5.12 Embedded Files. Embedded files and objects shall be produced as attachments to the Document in which they were embedded, with the parent-child relationship preserved, and shall be identified with a "Yes" in the "Embedded" Metadata field. Logos, icons, confidentiality legends, and similar non-substantive images need not be extracted and separately produced so long as they are displayed in the parent Document. To the extent a Producing Party proposes to cull or exclude any other embedded file or object from its review, it shall disclose the proposal and the Parties shall meet and confer.

5.13 Hyperlinked Files. The Parties agree to meet and confer prior to the commencement of document productions regarding each party's use of hyperlinked files, if any, and the proposed scope of collection, review and production with respect to such hyperlinked files, including the version(s) of the hyperlinked files to be collected, reviewed, and produced. If any hyperlinked files are to be collected, reviewed, and produced, the quantity shall be reasonable and proportional. Hyperlinked information that is publicly available or is ESI not within the possession, custody, or control of the producing party shall not be included.

Case 1:26-cv-03475-PKC Document 32 Filed 10/23/26 Page 18 of 31

5.14 Compressed and Container Files. Compression file types (e.g., .CAB, .GZ, .RAR, .ZIP), shall be decompressed to ensure that a compressed file within a compressed file is decompressed into the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this ESI Protocol.

5.15 Load File Formats. Documents should be provided with an Opticon Cross-Reference File and Concordance data Load File using standard Concordance delimiters:

(a) Hard Copy Documents.

(i) Field Separator: ASCII character 20 ("¶");

(ii) Quote: ASCII character 254 ("þ"); and

(iii) New Line: ASCII character 174 ("®").

Concordance-compatible image and data Load Files should be provided in a "Data" folder.

(b) ESI.

(i) Text Delimiter ("Quote"): "þ", Hex (FE), Unicode (U+00FE), Decimal (254);

(ii) Field Separator ("Comma"): "¶", Hex (14), Unicode (U+0014), Decimal (20); and

(iii) New Line: ASCII character 174 ("®").

All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the CC field contains semi-colons between Email addresses, the tag field should also contain semi-colons. Concordance-compatible image and data Load Files should be provided in a "Data" folder. Parties have the option to exchange sample Load Files. If this exchange occurs, the Requesting Party will have fourteen (14)

Case 1:26-cv-03475-PKC Document 32 Filed 10/13/26 Page 19 of 31

days to respond with Load File change requests. Nothing in this Order will limit the Parties from discussing Load File changes throughout the course of the Action.

5.16 De-Duplication. The Parties shall use reasonable, good faith efforts to avoid the production of duplicate Documents. The Parties agree that production of ESI Documents globally de-duplicated to remove exact duplicate Documents shall constitute production of Documents as maintained in the ordinary course of business provided that a single copy of the responsive Document or record is produced. Duplicates shall be defined as ESI with exact MD5 or SHA-1 hash values. Removal of near-duplicate Documents is not permitted. However, if there is a burden associated with the number of near-duplicates the parties will meet and confer to discuss the removal of near-duplicates. Attachments shall not be eliminated as duplicates unless the parent Email and all of its attachments are also duplicates. An Email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of an Email that does not include content in that field, even if all remaining content is identical. Where any such Documents have attachments, hash values must be identical for both the Document–plus–attachment(s) (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone. Upon request, the Producing Party will provide information on how duplicates are identified. When the Producing Party is globally de-duplicating across Custodians, the Producing Party shall populate a field of Metadata that identifies each Custodian who had a copy of the produced Document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the Custodian whose Document is produced. The Producing Party shall also populate an "All File Path" field listing each file path from which a removed duplicate Document was collected. The Parties acknowledge that the Duplicate Custodian and All File Path fields may become outdated in rolling productions; where that occurs, the Producing Party shall provide an overlay file

supplying complete Custodian and file path information for the affected Documents with, or promptly following, each subsequent production. A Producing Party may use other reasonable methods to remove duplicate Documents from production provided that method is disclosed to the Requesting Party.

5.17 De-NISTing. Each Party will use reasonable efforts to filter out common system files and application executable files. Non-user generated files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced. Additional culling of system files based on file extension shall be limited to the following: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers. Any further culling by file extension or file type requires prior disclosure to, and the agreement of, the Requesting Party. Parties need not produce non-human readable E-Documents, except upon a showing of good cause by the Requesting Party.

5.18 Email Threading. Removal of documents from production using near-deduplication and email thread suppression is, except with respect to email threads containing redactions, not acceptable. The parties may thread suppress email communications for the purposes of review, so long as all less inclusive emails are produced, along with each of their attachments. With respect to email threads containing redactions, a receiving party may meet and confer with the producing party regarding the need to produce less inclusive emails.

5.19 No Email may be withheld from production, or omitted from a privilege log, on the ground that its contents are included in whole or in part within another Email that is produced. A Producing Party may use Email threading tools for its own internal review or other internal processes to reduce duplicative review, provided that threading is not used to limit the Emails produced.

5.20 Production of Transcripts. If deposition or other transcripts are responsive, they may be produced like any other Document, except that a Requesting Party may request production in another format and the Parties agree to meet and confer to discuss an alternative format for producing the transcripts.

5.21 Custodian or Originating Source. The Custodian or originating source shall be identified in the Custodian field of the database Load Files, as provided in Appendix A. Documents found in the possession of a natural person (or on a natural person's hardware or storage Media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility. A Producing Party shall use a uniform description of a particular agreed Custodian across productions.

5.22 Non-English Documents. To the extent that any Party has any Documents or information in languages other than English, the Parties will meet and confer regarding the proposed scope of collection, review and production with respect to such documents.

5.23 Time and Date. The time zone in which the data was processed will be disclosed by the Producing Party. When processing newly collected ESI, UTC should be selected as the time zone. When a Metadata field includes a date and/or time, it shall be provided in the following

format: mm/dd/yyyy hh:mm:ss. ESI items shall be processed so as to maintain the date/time in the Document's Metadata as it was last saved by the Custodian or end user, not the date of collection or processing (i.e., shall force off Auto Date).

5.24 Production Method. The Producing Party shall produce Document images, Native Format files, Load Files, and Metadata by secure FTP link provided via Email at the time a production letter is Emailed, unless the Parties agree otherwise. Productions made via FTP or electronic transfer are not required to be supplemented with hard Media containing the same Documents. On the occasion in which a particular production is of a size that would make sending it via FTP link impractical, the Parties may agree to send encrypted physical Media such as a Hard Drive or USB ("Production Media"). Each piece of Production Media shall include a unique identifying label including the following information: (a) name of the Action and its case number; (b) name of the Producing Party, (c) the date of the production, (d) production volume number, and (e) the Bates number ranges of the Documents in that production. To the extent that the Production Media includes any confidential information protected under any protective order entered by the Court, the label on such Production Media shall indicate that the Production Media includes information so designated. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media must be encrypted, with the Producing Party to provide a decryption key, under separate cover, at the time of production.

5.25 Redacted Documents. To the extent a responsive Document requires redaction (e.g., attorney-client privilege, attorney work product, or any other reason agreed upon by the

Parties), the Parties agree that the Native version need not be produced, full text may be replaced with OCR text that excludes the redacted material, and Metadata fields may be excluded if they contain material redacted for privilege. The image file should show the word "Redacted – Privileged" or "Redacted – Other" where applicable and a production Load File field should be populated to indicate the Document contains a redaction. Metadata fields may be withheld if they contain information that may be redacted pursuant to this Paragraph. A Party may not redact any Document on the basis of non-responsiveness.

If a Document to be produced in Native Format contains information that may be redacted pursuant to this Paragraph, the Document may be produced by producing the Document in Native Format with the redactable information withheld, as long as the Document indicates that it has been redacted. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this Paragraph.

5.26 Phasing. The Parties shall meet and confer regarding the phasing of production of ESI from prioritized Custodians and sources, to the extent phasing is practicable and would make the production more efficient.

## VI. WITHHELD OR REDACTED MATERIALS

6.1 Privilege Log. The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5) on a rolling basis, within thirty (30) business days after each document production. Privilege logs will be provided in a searchable and sortable spreadsheet format. Certain privileged communications or Documents which post-date the filing of the Complaint in this Action need not be included in a privilege log unless otherwise agreed to by the Parties or ordered by the Court: (i) communications to or from outside legal counsel concerning this Action; (ii) attorney work product of counsel and Parties concerning this Action,

including but not limited to communications within any law firm representing a Party to this Action; and (iii) any communications to or from outside or in-house legal counsel concerning litigation holds or the preservation, collection, or review of discoverable information in this Action, unless and until a Party raises issues concerning the preservation, collection, or production efforts by another Party. The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise, including to address whether the alternative forms of a privilege log contemplated by Local Rule 26.2(c) may be appropriate in this Action. Further, the Parties agree that Documents that have been redacted for privilege should also be logged separately and include the fields as set forth in the following paragraph.

Privilege logs will clearly identify any attorneys on the privilege log using a tilde (~) or other agreed-upon method.

Absent any other agreement that the Parties may reach after further meet-and-confer discussions, the Producing Party will include fields on the privilege log containing: (a) a unique document ID or Bates number; (b) the log production date; (c) information sufficient to understand the authorship, recipients, subject matter, type, and dates of creation, sending, and/or receipt of withheld or redacted Documents; (d) the privilege asserted (e.g., attorney-client, work product); (e) a description of the nature of the withheld or redacted Document or communication in a manner that, without revealing information claimed privileged, will enable a Party to assess the privilege claim; and (f) an indication of whether the Document has been withheld in its entirety or produced in redacted form. The Parties shall meet and confer regarding any other information that the privilege log must contain, including information related to nonparty authors, addressees, and recipients.

A Receiving Party may challenge a Producing Party's claims of privilege or work product protection at any time. Before bringing a privilege challenge to the Court, the Receiving Party shall meet and confer with the Producing Party in good faith in an attempt to resolve any dispute regarding claims of privilege or work product protection. The inadvertent production of privileged or protected material, and the procedure for its return or destruction, are governed by the Protective Order, including the order entered thereunder pursuant to Federal Rule of Evidence 502(d).

## VII. MISCELLANEOUS PROVISIONS

7.1 Non-Party Documents. A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that non-parties produce Documents in accordance with the specifications set forth herein. The Issuing Party shall promptly notify the other Parties when it receives non-party productions and shall provide copies of such productions to the other Parties in the format in which they were received from the non-party within five (5) business days. In the event that the format of a non-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Requesting Parties. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena. All non-party subpoenas shall be served on all counsel of record in this Action; service by Email on a designated service list constitutes compliance with this requirement. The Issuing Party shall Bates stamp any incoming non-party production if the non-party has not done so.

7.2 Effect of Protocol. The Parties' agreement to this Protocol is without prejudice to the right of any Party to seek an order from this Court to rescind or amend this Protocol for good cause shown. Nothing in this Protocol abridges the rights of any person to seek judicial review or

to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this Action.

7.3 Effect on Discovery. Nothing herein constitutes an admission by any Party that any particular category of discovery is appropriate in this matter or that there exists producible ESI.

**VIII. NON-WAIVER**

8.1 The Parties agree that neither the stipulation to the entry of this Order by a defendant in this Action nor the production of Documents or ESI by any Party in this Action pursuant to this Order shall be a waiver of any claim or defense in this Action.

The Parties and their attorneys do not intend by this Order to waive or forfeit their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, United States or foreign bank disclosure or foreign bank secrecy laws or regulations, United States or foreign data privacy laws, foreign blocking statutes, or any other applicable United States or foreign statute, law, regulation, court order, restriction, privilege, or immunity from disclosure that may be applicable. All Parties preserve all of these protections and privileges, including but not limited to their attorney-client privileges, work product protection, and other privileges. The Parties and their attorneys are not waiving or forfeiting, and specifically reserve, the right to object to any discovery request on any grounds, including but not limited to relevance, undue burden, proportionality, and inaccessibility. Further, nothing in this Order shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

* * *

Case 1:26-cv-03475-PKC Document 26-1 Filed 09/18/26 Page 27 of 31

Agreed to and submitted by:

| | |
|---|---|
| */s/ Daniel J. Schwartz*<br><br>**DAVIS POLK & WARDWELL LLP**<br>Brian S. Weinstein<br>Daniel J. Schwartz<br>450 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 450-4000<br>Facsimile: (212) 701-5835<br>brian.weinstein@davispolk.com<br>daniel.schwartz@davispolk.com<br><br>*Attorneys for Defendant* | */s/ Sean Micah Akchin*<br><br>**BERMAN TABACCO**<br>Nicole Lavallee<br>Daniel E. Barenbaum<br>Sean Micah Akchin<br>425 California Street, Suite 2300<br>San Francisco, CA 94104<br>Telephone: (415) 433-3200<br>Facsimile: (415) 433-6382<br>nlavallee@bermantabacco.com<br>dbarenbaum@bermantabacco.com<br>sakchin@bermantabacco.com<br><br>*Attorneys for Plaintiff* |

So Ordered this [22nd] day of [October] 2026

Hon. P. Kevin Castel
United States District Court Judge

Case 1:26-cv-03475-PKC Document 32 Filed 09/18/26 Page 29 of 32

## APPENDIX A

### 1. COVER LETTER

A cover letter shall be included with each production and shall include information sufficient to identify all accompanying Media (e.g., hard drive, thumb drive, DVD, CD, secure FTP), shall identify each production on such Media by assigning a Production Volume name or number, shall indicate confidentiality, and shall include the Bates range for the Documents produced in each volume.

### 2. PRODUCTION LOAD FILES

There will be two Load Files accompanying all productions of paper Documents and ESI:

- The first will be a Metadata import file with a .DAT file extension, in Concordance format delimited file, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174, that contains the agreed upon Metadata fields in UTF-8 encoding. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.

- The second will be an image Load File containing the Document break instructions for the image base. The acceptable formats for the cross-reference files are .lfp and .opt.

### 3. ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS

- BegBates: Beginning Bates Number.

- EndBates: Ending Bates Number.

- BegAttach: Beginning Bates number of the first Document in attachment range in a Document Family range. Documents that are part of Document families, i.e., containing parents and attachments, should receive a value.

- EndAttach: Ending Bates number of the last Document in attachment range in a Document Family range. Documents that are part of Document Families, containing parents or attachments, should receive a value.

- AttachmentCount: Populated for Email parent records and indicates the number of attachments that constitute the whole family.

- Custodian: Name of the Custodian of the Document produced, to the extent reasonable and technically available. If the Document was collected from a centralized source, the Custodian field shall reference that centralized source.

- Duplicate Custodian: Identifying any and all unique custodians in whose files an exact duplicate Document was found.

- FileName: Filename of the original source ESI.
- NativeLink: Relative path and filename to the produced Native Format file.
- Subject: Subject line extracted from an Email message or calendar entry.
- Title: Title field extracted from the Metadata of a non-Email Document.
- Importance: Email importance flag, to the extent reasonably and technically available.
- Author: Author field extracted from the Metadata of a non-Email Document.
- From: From field extracted from an Email message, including both the display name and the SMTP address.
- To: To or Recipient field extracted from an Email message, including both the display name and the SMTP address.
- Cc: CC or Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- BCC: BCC or Blind Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- DateSent: Sent date of an Email message (mm/dd/yyyy format).
- TimeSent: Time of an Email message (hh:mm:ss format).
- DateReceived: Received date of an Email message (mm/dd/yyyy format).
- TimeReceived: Received time of an Email message (hh:mm:ss format).
- DateCreated: Creation date of a file (mm/dd/yyyy format).
- TimeCreated: Creation time of a file (hh:mm:ss format).
- DateLastModified: Last modification date and time (mm/dd/yyyy format).
- TimeLastModified: Last modification time (hh:mm:ss format).
- TimeZone: Last modification time zone (UTC-hh:mm format).
- File Extension: File extension of Document (.msg, .doc, .xls, etc.).
- Full Text: Relative file path to the full text/OCR File.

- Confidentiality: The confidentiality designation applied by the Designating Party under the Protective Order (e.g., "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER"); otherwise, blank.
- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.
- Hash Value: MD5 or SHA-1 hash of the Document.
- Page Count: The number of pages in the file.
- Production Volume: Production volume name or number.
- Redaction: Field indicating whether a Document contains redactions.
- File Path: The directory structure or path where the original source ESI was stored.
- All File Path: The file paths of the locations in which removed duplicate Documents were stored.
- File Size: Size of the source native file.
- LastModifiedBy: Name of the person who last modified or saved the Document.
- Conversation Index: The Outlook Conversation Index ID used to tie together Email threads.
- Message Type: The Email system file type, or for an Instant Message, the messaging platform.
- Document Type: Describes the type of Document, e.g., "E-document" for electronic Documents not attached to an Email, "Email" for Emails, and "Attachment" for attached Documents.
- Embedded: A Yes/No indicator identifying whether a Document was embedded in another Document.
- Track Changes: A Yes/No indicator identifying whether a Document contains tracked changes.
- Source: The source from which the Document was collected.

** As it relates to the Custodian and Duplicate Custodian Metadata fields above, the Producing Party reserves the right to produce in single field including all custodians (e.g., Custodian) since the Metadata may already be exported and logged as such.

** Same is true with all Date and Time fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the Load File.